UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANTUAN LITTLE,

        Plaintiff,

    v.                                  Case No. 22-cv-665-bhl

BRIAN FOSTER,

        Defendant.

## DECISION AND ORDER

Plaintiff Antuan Little, who is representing himself, is proceeding on a First Amendment claim that Defendant Brian Foster, the Warden at the Waupun Correctional Institution (WCI) intentionally delayed Little's transfer to a medium-security institution in retaliation for filing an appeal in his federal habeas corpus lawsuit. Dkt. No. 11. On August 10, 2022, Warden Foster filed a motion for summary judgment contending that Little's claim is barred because he did not exhaust his administrative remedies prior to bringing this lawsuit. Dkt. No. 31. Because the undisputed facts show that Little's inmate complaint and appeal did not give the institution notice and opportunity to investigate the specific claim he raises here—a retaliation claim against Warden Foster—the Court will grant summary judgment and dismiss the case without prejudice.

## UNDISPUTED FACTS

At the relevant time, Little was an inmate at WCI, where Foster was Warden. Dkt. No. 33, ¶¶1-2. On January 2, 2018, Little's classification level dropped from "maximum" to "medium," meaning he was eligible for a transfer from WCI to Redgranite Correctional Institution (RCI). *See* Dkt. No. 35-2 at 8; *see also* Dkt. No. 33, ¶21. At the time of the reclassification, Little was engaged

in federal court litigation. Dkt. No. 11 at 2-3. On January 11, 2018, just over a week after the classification change, Little filed an appeal with the Court of Appeals for the Seventh Circuit in connection with a federal habeas petition. *Id*.

At this same time, and with his appeal pending, Little requested a transfer to a medium security facility from the Bureau of Offender Classification and Movement ("the Bureau") based on his changed classification status. Dkt. No. 35-2 at 8; *see also* Dkt. No. 42, ¶25. The Bureau is a division of the Wisconsin Department of Correction (DOC) responsible for overseeing inmate classification and for establishing an inmate's custody, placement, and program needs. Dkt. No. 33, ¶¶18-19. The Bureau is an entity separate from the various prison institutions and WCI has no authority to reclassify inmates. *Id.*, ¶20.

Little asserts that he did not receive a response to his request from the Bureau. Dkt. No. 35-2 at 8; *see also* Dkt. No. 42, ¶25. Accordingly, on October 17, 2018, Little filed an inmate complaint alleging:

> The Classification and Movement officers put a hold on my transfer to medium due to a lawsuit I filed against the institution. It's holding me back from my programs. I request the hold be removed so I could go to medium.

Dkt. No. 35-2 at 8. The complaint was reviewed by Institution Complaint Examiner (ICE) Tonia Moon, who and rejected it under §DOC 310.10(6), concluding that the complaint did not involve polices, rules, living conditions, or employee actions that personally affect the inmate or institution environment. Dkt. No. 35-2 at 2. Moon explained that Little's pending lawsuit was a federal habeas corpus petition, and Federal Rule of Appellate Procedure 23(a) prohibited transfer of an inmate when there is a pending habeas proceeding. *Id*. Moon further noted that Little would have to get a court order in accordance with FRAP 23(a) to transfer institutions. *Id*. Because an appellate rule (not a prison-related factor) prevented the transfer, Moon concluded that Little had

2

not raised an issue regarding polices, rules, living conditions, or employee actions that personally affect the inmate or institution environment and rejected the complaint. *Id*.

On October 22, 2018, Little appealed the rejection. *Id*. at 5. In explaining the basis for his appeal, he stated:

> "I disagree I already filed a motion regarding FRAP 23A. Court trusts or assumed respondent would file petition for authorization to transfer not put a hold on transfer."

*Id.* at 10. On October 24, 2018, Foster, in his role as Warden, affirmed the ICE's rejection, concluding that Moon had appropriately applied §DOC 310.10(6). *Id*. at 5.

On November 1, 2018, Little filed this lawsuit against Warden Foster. Dkt. No. 1. In his complaint, Little alleges that Warden Foster knew about his habeas petition as early as March 2018, that Little personally reached out to Warden Foster multiple times regarding his transfer, and that Foster responded by telling Little that the process "could take up to six months" and that "lack of readily available bed space" was causing the delay to a medium security facility. *Id*. at 9-14. Little further alleges that other inmates who received classification drops after him were being moved to medium security facilities ahead of him, so he knew Warden Foster's explanation regarding bed space was not a legitimate reason to delay his transfer. *Id*. at 14. Little also alleges that he received two letters with conflicting information—one letter from his social worker who stated that his transfer hold was due to a pending lawsuit and another letter from Foster who identified a bed space issue. *Id*. Little claims that Warden Foster was using Appellate Rule 23(a) as a ruse to prevent or delay his transfer. *Id*.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The party asserting that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## ANALYSIS

Warden Foster argues he is entitled to summary judgment because Little failed to exhaust his administrative remedies. Dkt. No. 32. He insists that the undisputed facts show that Little's inmate complaint did not give the institution notice and opportunity to investigate the claim Little seeks to raise here—a retaliation claim *against Foster*. *Id*. at 10-14. Foster explains that Little's initial inmate complaint makes no mention of Foster or retaliation anywhere and, in fact, complains only that the Bureau (an entity separate from the institution) did not timely transfer him. *Id*. Because Little's inmate complaint and appeal gave the ICE no reason to think she needed to investigate a potential retaliation claim against Warden Foster, Foster maintains Little's federal claim must be dismissed as unexhausted. *Id*.

4

The Prison Litigation Reform Act provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). "The primary justification for requiring prisoners to exhaust administrative remedies is to give the prison an opportunity to address the problem *before* burdensome litigation is filed." *Chambers v. Sood,* 956 F.3d 979, 983 (7th Cir. 2020).

Wisconsin has established the Inmate Complaint Review System (ICRS) to review inmate grievances. Wis. Admin. Code § DOC 310.05. Inmates must file an inmate complaint with the ICE within 14 days of the relevant occurrence. Wis. Admin. Code § DOC 310.07(2). The inmate complaint must provide enough facts to give defendants "notice of, and an opportunity to correct, a problem." *Price v. Friedrich*, 816 F. App'x 8, 10 (7th Cir. 2020) (quoting *Schillinger v. Kiley*, 954 F.3d 990, 995-96 (7th Cir. 2020)). The inmate "need not lay out the facts, articulate legal theories, or demand particular relief." *Strong v. David,* 297 F.3d 646, 649 (7th Cir. 2002). But the inmate complaint must "alert[] the prison to the nature of the wrong for which redress is sought." *Id.* at 650.

The ICE may "reject" an inmate complaint for a variety of reasons including "the inmate does not raise an issue regarding policies, rules, living conditions, or employee actions that personally affect the inmate or institution environment." § DOC 310.10(6)(b). An inmate may appeal a rejected inmate complaint to the RA within 10 days and the RA's decision is final. § DOC 310.10(10).

There are limited exceptions to the exhaustion requirement. For example, inmates need not exhaust administrative remedies that are unavailable. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Administrative remedies are "unavailable" where "(1) prison officials are 'consistently

5

unwilling to provide any relief to aggrieved inmates;' (2) the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use;' or (3) prison administrators take affirmative action to thwart use of the grievance process." *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018) (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016)).

The undisputed evidence shows that Little's inmate complaint and appeal did not include allegations sufficient to give the institution notice and opportunity to investigate a retaliation claim against Warden Foster. Indeed, the crux of Little's current lawsuit is that Warden Foster improperly delayed his requested transfer to a medium security facility by giving him conflicting reasons for the delays and using FRAP 23(a) as a ruse to prevent or delay his transfer in retaliation for a habeas petition appeal he had filed in January 2018. But Little's inmate complaint does not include any of these assertions. It does not reference retaliation at all. And Little "concedes he did not submit a complaint on Foster." Dkt. N. 42, ¶6. Little's inmate complaint blamed the Bureau for not transferring him due to a pending lawsuit. The ICE therefore rejected that inmate complaint under §DOC 310.10(6)(b) based on the reasonable belief that the inmate complaint involved a federal appellate rule and not a prison-related factor.

Even during his administrative appeal, Little took no steps to suggest or clarify that the ICE had misunderstood his complaint. He did not, for example, claim that he really wanted to assert a retaliation claim against Warden Foster. Instead, he simply challenged who was responsible for showing compliance with the appellate rule. Little never alleged that Foster intentionally and improperly delayed his transfer. Nor did he contend that Warden Foster was using FRAP 23(a) as a ruse to delay his transfer while approving other inmates' transfers. Indeed, Little ultimately "concedes that rejection of the [inmate complaint] may have been warranted pursuant to DOC 310.10(6)(b) because Rule 23a is not an issue regarding prison policies, rules,

6

Case 2:22-cv-00665-BHL   Filed 11/03/22   Page 6 of 9   Document 46

living conditions of employee actions that personally affected Little of the institution environment." Dkt. No. 42, ¶10. Warden Foster has therefore met his burden of showing that the institution did not have notice and opportunity to investigate a possible retaliation claim against Foster.

Little offers two arguments to support a finding that he satisfied the exhaustion requirement. He first argues that he sufficiently provided notice of a retaliation claim by simply identifying the protected conduct (filing a habeas petition appeal) and the retaliatory act (delayed transfer to a lower security facility) in his inmate complaint. Dkt. No. 41. He cites several district court cases noting that a retaliation claim must "at a minimum" identify the protected conduct and the retaliatory act. *Id*. at 6-7; *see e.g. Lockett v. Goff*, No. 17-CV-93-JDP, 2017 WL 4083594, at *2 (W.D. Wis. Sept. 13, 2017) ("If the grievance concerns alleged retaliation, then at a minimum it must identify two things: the protected conduct that provoked the retaliation and the retaliatory act.") But these cases do not support Little's position here. While in most retaliation cases, the notice requirements may be satisfied by simply identifying the protected conduct and alleged retaliatory act, the situation here demonstrates what more was required. As Little himself acknowledges, an appellate rule flatly prohibited an inmate from transferring institutions when a habeas petition is pending, and the ICE reasonably interpreted Little's inmate complaint filed against the Bureau as running up against that appellate rule. Little did not allege an improper or retaliatory purpose for the delay in his transfer, nor did he identify Warden Foster as the subject of his complaint. Given these facts, Little's failure to identify Warden Foster or suggest the failure to transfer stemmed from an improper motive prevented fair notice to the institution of any potential retaliation claim. *See e.g. Scolman v. Foster*, No. 17-CV-54-WMC, 2020 WL 2039180, at *2 (W.D. Wis. Apr. 28, 2020) (granting Defendant's motion for summary judgment based on

7

failure to exhaust administrative remedies because "Plaintiff's failure to allege that defendants refused to transfer him *because* he engaged in constitutionally protected activity prevented the prison officials from investigating defendants' intent in declining to transfer him.").

Moreover, Little has only himself to blame. If he intended to claim that Warden Foster was retaliating against him, he could have raised that issue during his administrative appeal. But he said nothing of the sort. Likewise, if Little thought the ICE had misunderstood his inmate complaint, he needed to correct that misunderstanding through his appeal. Had he done so, the RA could have remanded the case and the administrative procedures would have had a chance to address his claim. But, again, Little never mentioned retaliation and did not allege Warden Foster was denying his transfer for an improper purpose during his appeal.

Little's second argument is that administrative remedies were unavailable to him because "the issue seems non-grievable." Dkt. No. 41 at 12. He argues that he was never given a clear answer for the delays in his transfer and argues that the appellate rule was misapplied. But even if the delays were unfounded and the rule inapplicable, these facts do not show that anyone interfered with or prevented Little from using the grievance process. There is no suggestion that Warden Foster or anyone else refused to give Little a copy of the inmate complaint form or writing materials. Nor is there any evidence that anyone otherwise interfered with his ability to exhaust, by, for example: refusing to review or process Little's inmate complaint; refusing to provide him with correct information on how to use the grievance process; or otherwise discouraging or thwarting the grievance process. The record contains no evidence that the grievance process was unavailable to Little—he simply failed to use it to raise the retaliation claim against Warden Foster that he now wishes to bring in this lawsuit. For the reasons stated above, the Court will grant Defendant's summary judgment motion and dismiss this case without prejudice.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's motion for summary judgment based on failure to exhaust administrative remedies (Dkt. No. 31) is **GRANTED;** and the case is **DISMISSED without prejudice.** The Clerk's office shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin on November 3, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.